30 C.C.P.A.(Patents)

## In re C. W. MARKS SHOE CO.
### Patent Appeal No. 4622.

United States Court of Customs and
Patent Appeals.

Oct. 26, 1942.

Joshua R. H. Potts, Eugene Vincent Clarke, and Basel H. Brune, all of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents affirming the decision of the Examiner of Trade-Marks denying appellant's application for the registration of an alleged trademark under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq.[1]

The mark in question consists of the words "Lady Chesterfield," and is used on shoes.

The tribunals of the Patent Office concurred in holding that appellant's mark consisted merely in the name of an individual, and that, as it was not written, printed, impressed, or woven in a distinctive manner, it was not registrable by virtue of the proviso contained in section 5(b) of the act in question, which reads: " * * * no mark which consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed, or woven in some particular or distinctive manner, or in association with a portrait of the individual, * * * shall be registered under the terms of this Act [subdivision of this chapter]."

In his decision, the Commissioner of Patents stated:

The examiner refused registration on the ground that applicant's mark is the name of an individual not distinctively displayed.

Counsel points out that "Chesterfield" is not a surname in common use; and that in any event the word is not "merely" the name of an individual, because it also means a particular type of overcoat. Applicant's mark, however, is not "Chesterfield," but "Lady Chesterfield;" and it seems to me that the combination precludes any other significance than that

---

[1] This cause was originally decided by this court on the 29th day of June 1942. Thereafter, counsel for appellant filed a petition for rehearing. The rehearing was granted October 23, 1942, solely for the purpose of permitting the court to revise certain language in its original decision to which counsel for appellant directed the court's attention.

of a name. Nor is it material that the name is not in common use, for as was observed by the Court of Customs and Patent Appeals in the case of In re Nisley Shoe Co., 19 C.C.P.A., Patents, 1211, 58 F.2d 426, 427, "the statute makes no exception in the case of uncommon or rare names."

Counsel urges that the mark is nevertheless registrable, because it is "the name of a deceased person who achieved fame and distinction," and cites Shoemaker on Trade-Marks as authority for the proposition that names of that character are entitled to registration. Assuming, arguendo, the soundness of such doctrine, I am unable to apply it here in the absence of proof that the late lady in question qualifies thereunder.

It is contended here by counsel for appellant that the mark "Lady Chesterfield" is not merely the name of an individual, and that it is entitled to registration for the reasons set forth in their brief as follows:

There is no evidence in the record that there is any individual bearing the names "Chesterfield" or "Lady Chesterfield" and the only evidence shows that said names do not appear for any individual in the telephone directories of Chicago and Philadelphia, two of the largest cities in the United States.

\* \* \* \* \*

It [the mark "Lady Chesterfield"] is universally recognized as having a primary distinctive, suggestive significance, to wit: 1. Elegance. 2. The name of a fanciful person or the wife of a deceased person having achieved fame and distinction for elegance.

\* \* \* \* \*

The real name of the famous Lord Chesterfield was Phillip Dormer Stanhope. "Lord Chesterfield" was merely his title and not his name, and the title of his wife was Lady Chesterfield. Stanhope died in 1773. The foregoing data are given by Burke's Peerage, the Dictionary of National Biography and other authorities, which state that Lord Chesterfield was noted for being "exquisitely elegant."

No claim is made here by counsel for appellant that the mark is written or printed in a distinctive manner.

The Solicitor for the Patent Office points out in his brief that the 1940 edition of "Who's Who" lists "a twelfth Earl of Chesterfield, who is married" (appellant's application was filed July 22, 1939), and it is contended by the Solicitor that the bearer of that title is "referred to as Lord Chesterfield and his wife as Lady Chesterfield," and that the names "Lord Chesterfield" and "Lady Chesterfield" are intended to, and do, in fact, designate those individuals. The Solicitor also calls attention to the fact that such titles as Byron, LaFayette, Wellington, Essex, and Chesterfield are listed in such standard reference works as the Encyclopedia Britannica, and are generally accepted by the public as the names of the individuals who bore them, rather than the family names—Gordon, DuMotier, Wesley, Capal, and Stanhope, respectively. It is also contended in the brief of the Solicitor that, although the name "Chesterfield" may have a secondary meaning, such as elegance, the name is not registrable merely for that reason, and the decision of this court in the case of In re Canada Dry Ginger Ale, Inc., 24 C.C.P.A., Patents, 804, 86 F.2d 830, overruling our decision in the case of In re Plymouth Motor Corporation, 18 C.C.P.A., Patents, 838, 46 F.2d 211, so far as it held that a geographical term was registrable as a trade-mark if it had acquired a secondary meaning, was cited in support of that contention.

As will be observed, the Commissioner of Patents stated in his decision that the Examiner of Trade-Marks had refused registration of the involved mark on 'the ground that it is the name of an individual, not displayed in a distinctive manner.

In his decision, the Examiner of Trade-Marks said: " * * * The ground of refusal to register is that the mark is *merely the name of an individual not distinctively displayed. The basis for refusal* is the decision of the Assistant Commissioner in Cluett, Peabody & Co., Inc. v. Adelphi Shirt Co., 159 Ms.D. 778 [31 U.S.P.Q. 162], wherein the mark 'Lord Kent' was refused registration under the 1905 Act. Therein the Assistant Commissioner said: ' * * * I do not think the addition thereto of the title "Lord" saves it from being merely the name of an individual within the meaning of the statute.'" (Italics ours.)

In the case of Cluett, Peabody & Co., Inc. v. Adelphi Shirt Co., 159 Ms.D. 778, 31

U.S.P.Q. 162, which was the basis for the holding of the Examiner of Trade-Marks in the instant case, the Commissioner of Patents, in holding that the trade-mark "Lord Kent" was confusingly similar to the trade-mark "Kent," stated that, in addition to the term "Kent" being a geographical term, it was "admittedly a common surname," and that the addition of the title "Lord" did not prevent the trade-mark "Lord Kent" from being merely the name of an individual within the meaning of the proviso contained in section 5(b), supra. In support of such holding, the Commissioner cited the case of In re Artesian Mfg. Co., 37 App.D.C. 113, wherein it was held that the trade-mark "Deacon Brown" was not registrable under the Trade-Mark Act of February 20, 1905, because the mark was merely the name of an individual, not displayed in a distinctive manner. In so holding, the court said: "We agree with the Commissioner that 'the name "Brown" is a common surname, and the prefixing of the word "Deacon" thereto no more renders it registrable than would the prefixing of the word "Mr." "Dr.," "General," or the like.'"

The court then stated that the decision of the Commissioner was in harmony with other decisions on the subject which it cited, but which we deem unnecessary to refer to here.

It is evident from his decision that the Examiner of Trade-Marks held that the term "Chesterfield" was in use as a surname; that it was the dominant or distinguishing feature of appellant's mark; and that, in view of the authority cited by him, the association therewith of the term "Lady" did not render appellant's mark registrable.

It appears from the record that counsel for appellant argued before the Examiner of Trade-Marks and before the Commissioner that as the telephone directories in Chicago and Philadelphia did not disclose the term "Chesterfield" as the name of any individual residing in those cities, it was not a *common* surname, and that if it "had been found in a directory," presumably by the Examiner of Trade-Marks, "that, in itself, would not establish that" it "was a *common* surname as, at most, it would only establish that it was a surname for one or more persons." (Italics ours.)

■ It is apparent from the record that counsel for appellant understood that the Examiner of Trade-Marks refused to register appellant's mark on the ground that the name "Chesterfield" was in use as a surname and that appellant's mark was merely the name of an individual not distinctly displayed; that counsel then contended that the name "Chesterfield" was not *commonly* used as a surname and that, unless it was commonly so used, it, in association with the term "Lady," was registrable under the Trade-Mark Act of February 20, 1905. In this connection it is sufficient to say that whether the name "Chesterfield" is commonly or only rarely used as a surname is not of vital importance as held by the Commissioner. In re Nisley Shoe Co., 19 C.C.P.A., Patents, 1211, 58 F.2d 426.

It also appears from the record that counsel for appellant contended before the tribunals of the Patent Office that the name "Chesterfield has a distinct arbitrary well-understood meaning. *It signifies smartness and this significance is its only significance.* Even if there were any person with the name, however, it is manifest that the significance of *smartness* is the dominating significance and this must be clear from the fact that the name was chosen for shoes." (Italics ours.) In their brief in this court, however, counsel for appellant contend, as hereinbefore noted, that the mark "Lady Chesterfield" is—universally recognized as having a primary distinctive, suggestive significance, to wit: 1. Elegance. 2. The name of a fanciful person or the wife of a deceased person having achieved fame and distinction for elegance.

The term "Chesterfield," as held by the tribunals of the Patent Office, is not only in use as a surname, but, according to such standard works as Funk & Wagnalls New Standard Dictionary and the Encyclopedia Britannica, is the name of a certain style of overcoat "so-called from an Earl of Chesterfield of the 19th Century [the 'Lord Chesterfield' referred to in the quoted excerpt from appellant's brief]," is a part of the title "Earl of Chesterfield," and is also a geographical term.

We find nothing whatsoever in any standard authority to indicate that the name "Lady Chesterfield" signifies any-

thing other than that the person bearing that title is the wife of a person bearing the name "Chesterfield." Nor do we find anything to indicate that the name "Lady Chesterfield" has a primary significance of either smartness or elegance.

As the term "Chesterfield" is in use as a surname, it is the distinguishing feature of appellant's mark. See The American Tobacco Co. v. Wix, 20 C.C.P.A., Patents, 835, 838, 839, 62 F.2d 835. Ac-

cordingly, the addition of the descriptive title "Lady" to the surname "Chesterfield" does not render appellant's mark registrable under the Trade-Mark Act of February 20, 1905. In re Artesian Mfg. Co., supra, and cases therein cited; Cluett, Peabody & Co., Inc. v. Adelphi Shirt Co., supra.

For the reasons stated, the decision of the Commissioner of Patents is affirmed.

Affirmed.