**LUCIEN PICCARD WATCH CORP.,**
Plaintiff,

v.

**Since 1868 CRESCENT CORPORATION**
d/b/a Crescent Corporation,
Defendant.

No. 69 Civ. 3702.

United States District Court,
S. D. New York.

April 30, 1970.

Blum, Moscovitz, Friedman & Kaplan, New York City, for plaintiff; Harold I. Kaplan, Martin J. Beran, Ira Allen Paur, New York City, of counsel.

Alan W. Borst, New York City, for defendant.

MANSFIELD, District Judge.

In this trademark infringement case brought against a luggage manufacturer for its use of the name "Da Vinci" on a recently-introduced line of luggage, defendant has moved for summary judgment or, in the alternative, for an early trial of the action.

Plaintiff is the owner of two Patent Office registrations for the name Da Vinci. The first, issued on September 13, 1960, covers personal jewelry—cuff links, tie pins, tie bars, money clips and collar pins. The second, issued on February 1, 1966, covers items of leather giftware—key cases, wallets, billfolds, money clips, eyeglass cases, jewelry boxes, memo pads and notebooks. Plaintiff is also using the trademark Da Vinci on watches, neckties, shirts and "boutique items" such as desk accessories, although the mark is not registered as to these uses. In general plaintiff's use of the mark Da Vinci has expanded steadily since it was first used on certain jewelry items in 1959. It appears, however, that the key cases, wallets, billfolds and eyeglass cases included in plaintiff's second registration of the Da Vinci mark were manufactured and sold in quantity for only a limited period commencing in 1966, and that no shipments of any of these items have been made by plaintiff to the trade for at least the last two years.

Defendant has been engaged in the manufacture of luggage for 16 years and does an annual volume of business in excess of $2,000,000. On June 27, 1969, following a trademark search which uncovered plaintiff's Da Vinci registration on leather giftware, and a subsequent investigation of plaintiff's actual use of the mark, defendant adopted the Da Vinci mark for use on a high-quality line of cordura nylon luggage. Crescent's Da Vinci line is being sold nationwide, and the company has spent some $13,000 in connection with the printing of tags and brochures promoting the new luggage.

Plaintiff alleges that

"continued use of DA VINCI by defendant in conjunction with luggage is likely to dilute the distinctiveness of the trademark DA VINCI and the good will built up therein by plaintiff in connection with its goods, and it is likely to cause purchasers to make the mistake of believing that DA VINCI luggage is just another item in the line of high quality DA VINCI products emanating from plaintiff." (Complaint ¶ 10)

Plaintiff has accordingly sued for preliminary and permanent injunctive relief against defendant's use of the Da Vinci mark on luggage, for an accounting of profits already made by the defendant through use thereof, and for counsel fees and costs.

On this motion by the defendant for summary judgment four issues are presented: (1) whether plaintiff's two registrations of the Da Vinci mark are valid or have been improperly issued or fraudulently obtained; (2) whether plaintiff abandoned the mark in whole or in material part; (3) whether the Da Vinci mark has been too widely used to be the exclusive property of the plaintiff; (4) whether, even if plaintiff's rights in the Da Vinci mark as registered are fully enforceable, defendant's use of the mark on its luggage constitutes an infringement of those rights.

*Validity of Plaintiff's Trademark Registrations*

Defendant contends (1) that since the Da Vinci mark suggests a connection with a person living or dead and is "primarily merely a surname," it is nonregistrable under 15 U.S.C. §§ 1052(a) and (e),[1] and (2) that since at the time

1. "§ 1052. *Trade-marks registrable on principal register; concurrent registration*
  "No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
  "(a) Consists of or comprises immoral, deceptive, or scandalous matter; or matter which may disparage or falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols, or bring them into contempt, or disrepute.
  \*      \*      \*      \*      \*
  "(e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them, or (2) when applied to the goods of the applicant is

plaintiff filed its applications for registration the name was not in fact being used by it on the goods stated in the application, the registrations were fraudulently obtained.

■ Neither of defendant's § 1052 contentions is persuasive. The use of the mark Da Vinci on plaintiff's jewelry and leather giftware is scarcely likely to mislead any substantial number of purchasers into believing that Leonardo Da Vinci was in any way responsible for the design or production of the goods. Hence it cannot be said that plaintiff's use of the mark "falsely suggests a connection" with persons living or dead. The contention that the mark is primarily a surname and hence barred from registration on the principal register by § 1052(e) is met by the fact that names of historical characters or noted persons are registrable, provided the primary connotation of the mark is of the historical character. While defendant has demonstrated by way of the Manhattan telephone directory that the name Da Vinci is in current use as a surname (by one C. Leonardo da Vinci and one Lora Da Vinci), the name Da Vinci, even without the given name Leonardo, comes very near having as its *exclusive* connotation the world-renowned 15th century artist, sculptor, architect, musician, engineer and philosopher (to whom defendant refers as a "deceased Florentine painter") and hardly suggests that he personally had something to do with the designing of plaintiff's luggage. It is thus distinguishable from such semi-historical names as Webster, Longfellow and Wayne, which have been denied registration, and closer to Rameses, Robin Hood and Samson, which have been granted it (although in the last case it was largely the "secondary significance"

of the name that rendered it registrable). Compare Ex parte Blair Co., 1913 C.D. 65 [Webster]; Ex parte Mills, 1913 C.D. 164 [Longfellow]; and Ex parte Wayne Pump Co., 88 U.S.P.Q. 437, 440 (1951) [Wayne]; with Stephano Bros. v. Stamatopoulos, 238 F. 89, 93 (2d Cir. 1916) [Rameses]; Brown Shoe Co. v. A. Werman & Sons, 76 U.S.P.Q. 357 (1948) [Robin Hood]; and Ex parte Keuffel & Esser Co., 96 U.S.P.Q. 216 (1953) [Samson].[2] See generally, A. Seidel, S. Dubroff & E. Gonda, Trademark Law and Practice § 8.04 (1963); In re C. W. Marks Shoe Co., 131 F.2d 437, 438, 30 C.C.P.A. 704 (1942). Da Vinci cannot be said to be "primarily merely a surname" within the meaning of § 1052(e).

Title 15 U.S.C. § 1051(a) (1) provides that the application for registration of a trademark must state, *inter alia*, the date of the applicant's first use of the mark in commerce and that the mark is, at the time of filing, in use in commerce. Defendant alleges in its answer to plaintiff's complaint that "at the time Plaintiff filed its applications for * * * [its] registrations DA VINCI was not then being used by Plaintiff on the goods stated in said applications." Defendant offers no evidence to substantiate this claim, nor does plaintiff make any specific effort to rebut it. On this record, therefore, an issue is presented which precludes summary judgment.

*Abandonment*

■ Defendant's second contention is that plaintiff has abandoned the Da Vinci mark as to the only goods—leather key cases, wallets, billfolds and eyeglass cases—with respect to which defendant's use of the mark on its luggage could

---

primarily geographically descriptive or deceptively misdescriptive of them, except as indications of regional origin may be registrable under section 1054 of this title, or (3) is primarily merely a surname."

2. Only the post-1946 cases cited here were decided under the present statute. Sec-

tion 1052(e) of that statute, however, represents a liberalization of the provisions relating to the registration of surnames; any name registrable before 1946, as well as some refused registration, may now properly be registered. See Ex parte Wayne Pump Co., 88 U.S.P.Q. 437, 439 (1951).

possibly constitute an infringement of plaintiff's rights.

15 U.S.C. § 1127 provides that

"A mark shall be deemed to be 'abandoned'—(a) when its use has been discontinued with intent not to resume. Intent not to resume may be inferred from the circumstances. Nonuse for two consecutive years shall be prima facie abandonment."

It is undisputed that plaintiff has not used the Da Vinci mark on key cases, wallets, billfolds and eyeglass cases for at least the last two years. Plaintiff insists, however, that it has never had any intention of abandoning the mark as to these goods, and characterizes the two-year hiatus as a "temporary discontinuance." Given plaintiff's continued use of the mark on other items in the same class as the discontinued items, including money clips, jewelry boxes, memo pads and notebooks, plaintiff's view must prevail even though it presents nothing more than flat assertions on the question of intent to discontinue.

"Where a registrant discontinues to use a trade-mark on a certain product, he will not be held to have abandoned the mark if he continues to use the mark on related items, and if the discontinued product is one which would still be thought by the buying public to come from the same source and is one which remained in the normal field of expansion of the owner's business." (Robinson Co. v. Plastics Research and Development Corp., 264 F. Supp. 852, 863 (W.D.Ark.1967))

See also Seidel, Dubroff & Gonda, Trademark Law and Practice § 29.02[4] and cases there cited. Since plaintiff developed the leather giftware items which were the subject of its 1966 registration of the Da Vinci mark as a group, and later sold them for a period of time as a group to at least one buyer (Cartier's), it is possible that the discontinued products are ones which would still be thought of by the buying public as coming from the same source and being within the normal field of expansion of plaintiff's business. An issue is thus presented which precludes our holding that plaintiff has abandoned the Da Vinci mark as to key cases, wallets, billfolds and eyeglass cases.

*Exclusiveness of Use*

Defendant's next contention is that the Da Vinci mark is, and was before plaintiff adopted it, so generally used on a wide variety of products in no way related to or controlled by plaintiff that plaintiff can have no exclusive property rights therein on which to predicate an injunction against defendant's use of the mark on its luggage.

Marks including the words Da Vinci have been registered on many different items in the past, including cigars, tableware, radios, artists' brushes, neckties, jackets and skirts, shoes, flavoring oils for candies, foods and cosmetics. The Manhattan telephone directory lists in addition at least five business establishments using the name Da Vinci. Such extensive prior and concurrent use has no doubt significantly narrowed and limited the scope of plaintiff's right to use the mark. However, we cannot say on this record that these prior uses have rendered plaintiff's Da Vinci mark so "weak" as to deny plaintiff the right to protection against use of the mark by others on luggage, provided it can establish that defendant's use of the mark does lead typical purchasers of its luggage to believe that plaintiff is the source. The name Da Vinci is clearly fanciful and arbitrary as applied to plaintiff's wares, since it does not in any way describe their kind, qualities, properties or place of manufacture. See Seidel, Dubroff & Gonda, Trademark Law and Practice § 4.04 at 71, 73 (1963). The uses cited by defendant are therefore not so extensive as to constitute a serious dilution of the mark, compare Triumph Hosiery Mills, Inc. v. Triumph International Corp., 308 F.2d 196, 199 n. 2 (2d Cir. 1962). Nor have they been used on items sufficiently related either to plaintiff's personal jewelry and small leather goods to preclude

infringement of plaintiff's mark. Compare Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607, 613 n. 9 (2d Cir. 1960). The most that can be said is that such prior uses and the weakness of the mark would be relevant in determining whether typical purchasers of defendant's luggage would be misled into the belief that plaintiff was the source.

We are left, therefore, with defendant's fourth contention: that defendant's use of the mark on its luggage does not constitute an infringement of plaintiff's rights in the mark.

■ "Confusion as to source of origin is * * * the keystone of an action based upon infringement of a registered mark. 15 U.S.C.A. § 1114(1)." Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607, 612 (2d Cir.), cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960). The issue turns principally upon whether there is a likelihood that an appreciable number of ordinary prudent purchasers of the defendant's luggage may, by reason of the Da Vinci mark, be misled into believing that the defendant's goods come from the same source as the plaintiff's jewelry and leather giftware. See Avon Shoe Co. v. David Crystal, Inc., *supra* at 612; Haig & Haig, Ltd. v. Maradel Products, Inc., 249 F.Supp. 575, 577 (S.D.N.Y.1966).

Defendant urges that the character and use of the goods to which plaintiff affixes the Da Vinci mark are completely dissimilar from those of its own luggage. It points out that its suitcases and bags are far larger than any of plaintiff's Da Vinci items; that its products are manufactured from cordura nylon rather than from leather or any imitation thereof; and that plaintiff's goods and its own are noncompeting items. Second, defendant argues that there is little if any industry recognition of overlap between leather giftware and luggage, stating that "there is no instance of an American company manufacturing both luggage and small leather goods such as wallets", that luggage manufacturers and the small leather goods producers are separate and distinguishable as to their interests, problems and trade show marketing, and that "the same trademark or similar trademarks are frequently in use by unaffiliated companies, respectively, on luggage and small leather goods items such as wallets and portfolios" [Bassoff Aff. at 7]. Third, defendant argues that its careful investigation of plaintiff's actual use of the Da Vinci mark, and its adoption of the mark for its luggage only upon advice of counsel that such use would not constitute infringement of plaintiff's rights in the mark, entitles it to treatment as an "innocent junior user" under the doctrine of the *Avon Shoe* case, regardless of confusion as to source of origin, so that plaintiff would ·be entitled to injunctive relief only if defendant's use tarnished or otherwise impaired the goodwill plaintiff has developed in the Da Vinci mark, and only if luggage manufacture were a field which could be considered within the bounds of normal expansion of plaintiff's business. See Avon Shoe Co. v. David Crystal, Inc., *supra* 279 F.2d at 613. In this connection defendant points out that it has been making and selling high quality luggage for 16 years, that it has always been scrupulously careful in its trade practices, and that the plaintiff has neither manufactured luggage·in the past nor manifested any intention of doing so in the future.

Plaintiff counters that the question of likelihood of confusion is not entirely theoretical; that there has already been one case of actual confusion involving a check made out to "Da Vinci" and intended for defendant but sent to plaintiff instead by Macy's department store; and that customers have exhibited surprise to see the use of the trademark Da Vinci on luggage, stating to plaintiff that they thought that the luggage company was a licensee.

Second, plaintiff argues that the trade relationship between luggage and men's jewelry or small items of leather giftware such as wallets is a close one, presenting photographic and other evidence that the two lines of goods are

displayed and sold in close proximity to one another in some stores and that at least one manufacturer, Louis Vuitton, produces both standard luggage and smaller items such as wallets and billfolds, as well as cosmetic cases, shaving kits, totes and other small luggage items.

Third, plaintiff describes in exhaustive detail the gradual expansion of its use of the Da Vinci mark, concluding that it is reasonable to assume that luggage should be considered to be within the bounds of normal expansion of its business.

Neither side's arguments are, on the current state of the record, fully convincing. While defendant may be correct that no American company manufactures both luggage and small leather goods such as wallets, companies whose products are readily available to the American purchaser—such as Louis Vuitton and Mark Cross—apparently do manufacture both lines of items. It is doubtful, too, that defendant qualifies as an "innocent junior user" comparable to the defendant in *Avon Shoe,* which adopted and used a mark completely without knowledge of the plaintiff's prior use. While Triumph Hosiery Mills, Inc. v. Triumph International Corp., 308 F.2d 196 (2d Cir. 1962), suggests that lack of knowledge is less important than an honest belief that one's conduct is non-tortious, see 308 F.2d at 199, the parties here are in conflict as to precisely how much defendant knew about plaintiff's use of the Da Vinci mark at the time it was adopted for use on luggage. [Bassoff Aff. at 2; Kolbrener Aff. at 10–11] We are without evidence sufficient to determine the extent to which defendant may or may not have intended to "obtain a free ride on the reputation of the owner of the trademark." 308 F.2d at 199. Finally, while the prices of defendant's Da Vinci line of luggage—$30 to $110—would seem to indicate that it is of a quality unlikely to tarnish the name under which it is sold, it is fair to say that much of the luggage previously manufactured by the

defendant—which was sold at prices ranging in the advertisements defendant has presented to us from $3.88 to $34.99 —may not be of a quality commensurate with that of the goods sold by plaintiff under the Da Vinci label. Compare Avon Shoe Co. v. David Crystal, Inc., *supra* 279 F.2d at 614.

Plaintiff's arguments are also subject to question in certain respects. The confusion at Macy's over the check made out to "Da Vinci" was apparently but a confusion of names by a billing clerk rather than confusion as to source or origin of the defendant's goods by a purchaser. Similarly, while evidence that luggage, jewelry and small leather goods are displayed and sold in close proximity to one another is *relevant* to the question of consumer confusion, it cannot substitute for evidence of such confusion itself. The absence of such direct evidence on the key issue in this case demonstrates the wisdom of this Circuit's observation that "Disputes between parties as to trademark validity and infringement can rarely be determined satisfactorily on a motion for summary judgment." Marcus Breier Sons, Inc. v. Marvlo Fabrics, Inc., 173 F.2d 29 (2d Cir. 1949). Confusion on the part of "an appreciable number of ordinary prudent purchasers" as to the source of origin of goods sold under a trade name is a question of fact, Durox Co. v. Duron Paint Manufacturing Co., 320 F.2d 882, 885 (4th Cir. 1963), and cannot be decided by the court on a motion for summary judgment unless the evidence presented is so clear that no real issue remains. Lemelson v. Ideal Toy Corp., 408 F.2d 860, 863 (2d Cir. 1969). This is not such a case.

■ Thus we find pursuant to Rule 56(d) that the material facts are not in controversy except for the following, as to which genuine issues exist:

(1) whether, at the time when plaintiff applied for registration of its Da Vinci mark, it was using the mark on the goods stated in its applications;

(2) whether plaintiff abandoned the use of the mark on goods allegedly related to luggage;

(3) whether there is a likelihood that an appreciable number of purchasers of defendant's luggage bearing a Da Vinci mark might be misled into believing that it emanates from the same source as plaintiff's merchandise.

Accordingly, defendant's motion for summary judgment must be denied. However, in view of the limited nature of the issues and proof remaining and the parties' interest in resolving the issues promptly, the case will be set down for trial of these issues on Monday, May 25, 1970, at 10:00 A.M.

It is so ordered.