THIS OPINION
IS A PRECEDENT
OF THE T.T.A.B.

Mailed:
March 15, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Thermo LabSystems Inc.[1]

_____

Serial No. 78204502

_____

Timothy D. Pecsenye and Lisa Casey Spaniel of Blank Rome LLP for Thermo LabSystems Inc.

Doritt Carroll, Trademark Examining Attorney, Law Office 116 (Michael Baird, Managing Attorney).

_____

Before Hairston, Rogers and Zervas, Administrative Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:

Thermo LabSystems Inc. has appealed from the final refusal of the trademark examining attorney to register WATSON (in standard character form) as a trademark for "computer software for use in laboratory information management, namely, software used in analyzing, reporting,

_____

[1] The application was assigned from InnaPhase Group Holdings, Inc., the original applicant at the time of filing, to Thermo LabSystems Inc. The assignment was recorded with the USPTO Assignment Division at Reel 3319, Frame 0948.

and tracking pharmaceutical drug study sample data for regulatory compliance"[2] in International Class 9.

The examining attorney refused to register applicant's mark on the ground that the mark is primarily merely a surname under Section 2(e)(4) of the Trademark Act. 15 U.S.C. § 1052(e)(4). After the examining attorney made the refusal final and denied applicant's request for reconsideration, applicant appealed. Both applicant and the examining attorney have filed briefs.

The only issue in this appeal is whether applicant's mark is primarily merely a surname. When we are faced with a Section 2(e)(4) refusal, we consider the impact a term has or would have on the purchasing public because "it is that impact or impression which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance. If it is, and it is only that, then it is primarily merely a surname." *In re Harris-Intertype Corp.*, 518 F.2d 629, 186 USPQ 238, 239 (CCPA 1975), quoting, *Ex parte Rivera Watch Corp.*, 106 USPQ 145 (Comm'r 1955).

---

[2] Application Serial No. 78204502, filed January 17, 2003, claiming first use anywhere and first use in commerce on November 1, 1995.

We normally look to four factors in a surname analysis: (i) whether the surname is rare; (ii) whether anyone connected with applicant has the involved term as a surname; (iii) whether the term has any other recognized meaning; and (iv) whether the term has the "look and feel" of a surname. See *In re United Distillers plc*, 56 USPQ2d 1220 (TTAB 2000), citing *In re Benthin Management Gmbh*, 37 USPQ2d 1332 (TTAB 1995).

The examining attorney has the initial burden of presenting evidence to show prima facie that a mark is primarily merely a surname. *In re Hutchinson Technology Inc*., 852 F.2d 552, 7 USPQ2d 1490 (Fed. Cir. 1988); *In re Raivico*, 9 USPQ2d 2006 (TTAB 1988).

The examining attorney submitted the following with her Office actions:

> (i) results of a search from the PowerFinder database showing 81,296 residential listings for the surname "Watson";

> (ii) various web pages identifying persons with the surname "Watson," notably Nobel Prize winner James D. Watson, who "is best known for his discovery of the structure of DNA"; Congresswoman Diane Watson of California; Thomas J. Watson, Jr., after whom Brown University's Watson Institute for International Studies is named; Mark W. Watson, Princeton University professor of economics and public affairs; actress Emma Watson; and John Watson, Johns Hopkins University professor of experimental and comparative psychology;

(iii) a webpage from about.com stating that "Watson" is a surname of English and Scottish origin;

(iv) another webpage from about.com and webpages from mongabay.com and behindthename.com stating that "Watson" ranks as the 72nd most common surname in the United States;

(v) an entry from rootsweb.com showing "Watson" as one of "The Most Common Surnames Used Today"; and

(vi) webpages from mongabay.com and behindthename.com stating that 283,800 persons and 256,161 persons, respectively, have "Watson" as a surname in the United States.

In view of the examining attorney's evidence, as well as applicant's statement at p. 7 of its brief that "the fact that WATSON is a surname is not disputed," we find that the record contains sufficient evidence to establish prima facie that the primary significance of the mark WATSON to the purchasing public for applicant's goods is merely that of a surname.

In regard to the first factor, i.e., whether the surname is rare, we note that the examining attorney's evidence shows over 81,000 residential listings and over 250,000 persons with the surname "Watson"; that "Watson" is the 72nd most common surname in the United States; and that "Watson" is the surname of several people who have made significant accomplishments in their professional lives.

4

We hence find that the examining attorney has shown that "Watson" is not a rare surname.[3]

Turning to the second factor, we consider whether anyone associated with applicant has the surname "Watson." Applicant has indicated in its response to the first Office action that no person associated with applicant has "Watson" as a surname. The fact, however, that "a proposed mark is not applicant's surname, or the surname of an officer or employee, does not tend to establish one way or the other whether the proposed mark would be perceived as a surname." *In re Gregory*, 70 USPQ2d 1792, 1795 (TTAB 2004). The absence of anyone associated with applicant who has the surname "Watson" is therefore a factor which is neutral.

Third, we consider whether there is any evidence to indicate that "Watson" has another recognized meaning. In this case, the examining attorney has not submitted any evidence of another recognized meaning for "Watson." (However, as discussed later in this decision, applicant

---

[3] Applicant has argued that "Watson" is a rare surname because "it is not among the most popular surnames such as Smith or Jones." Brief at p. 14. The about.com webpage shows Smith as the most common surname and Jones as the fourth most common surname in the United States. Certainly, a surname need not be among the most common surnames in order not to be a rare surname. Also, we are not persuaded that "Watson" is not one of the most common surnames – of all the surnames in the United States, "Watson" has been ranked as the 72nd most common surname.

maintains "Watson" has significance other than as a mere surname.)

Fourth, we consider whether the term has the "look and feel" of a surname. The examining attorney's evidence supports her argument that "Watson" has the "look and feel" of a surname. She has shown that there are numerous individuals with that surname; and that some of such persons are notable in view of their professional accomplishments. The resulting public attention contributes to public perception of "Watson" as a surname. *Gregory*, 70 USPQ2d at 1796. In addition, we note that the term would not be perceived as an acronym, initialism or a coined term, but instead, as "a cohesive term with no meaning other than as a surname." *Id*. Further, the examining attorney's evidence from about.com shows that like "Watson," many surnames end with "son," including the name identified as the second most common surname in the United States, i.e., Johnson. See also Anderson, Jackson, Thompson, Robinson, Nelson, Richardson, Peterson, Henderson and Patterson, which, like "Watson," are within the one hundred most common surnames in the United States.

Applicant has argued that WATSON "lies closer … to names like HACKLER that do not immediately proclaim their surname significance than to names like PIRELLI that do,"

in view of the Board's finding in *In re Industrie Pirelli Societa per Azioni*, 9 USPQ2d 1564 (TTAB 1988), *aff'd*, 883 F.2d 1026 (Fed. Cir. 1989) that PIRELLI was primarily merely a surname and in *United Distillers*, 56 USPQ2d at 1222, that HACKLER did not have the look and feel of a surname. "WATSON does not have a typical surname prefix (e.g. Mc or Mac) or suffix (e.g. –stein, -elli, -ski, or –berg) …." Brief at p. 15. This argument is not persuasive because a name need not have a "typical surname prefix … or suffix" to have the look and feel of a surname; and because "Watson" ends with "son," which the examining attorney has established is a typical surname suffix appearing in several names within the one hundred most common surnames in the United States.[4]

Applicant has also argued that it "does not use the WATSON mark in a way that highlights it[s] surname significance" but that it "consistently uses its mark, WATSON, in a way that detracts from the surname significance of the mark." Specifically, applicant argues that it "markets its WATSON software with a suite of software titles [GALILEO, COPERNICUS, KELVIN, NEWTON and

---

[4] To the extent applicant is contending that its use of "Watson" evokes the name of a well-known scientist, applicant's contention actually supports the conclusion that it has the look and feel of a surname. We discuss *infra* applicant's argument that WATSON should be viewed as an historical name.

DARWIN], all geared toward use in a particular laboratory setting and named after scientists who are well-known for their contribution to those fields." Brief at p. 16. Applicant's argument is not persuasive for several reasons. First, with the exception of "Galileo," each of the names applicant identifies in the "suite of software titles" is the *surname* of a well-known scientist. Second, applicant's evidence in support of its argument only shows use of "Newton," "Watson" and "Galileo" – applicant's argument in identifying other names goes beyond its evidence of actual use. Third, applicant's argument is of little relevance because applicant is applying for registration of the term WATSON alone and conditions of actual use are typically of little relevance in ex parte matters.

Additionally, applicant argues that the examining attorney has not set forth a prima facie case. According to applicant, the "[m]ere reference to [a] telephone directory listing is not sufficient to carry the Examining Attorney's burden"; "the Examining Attorney cannot be saved by her reference to additional evidence that still merely shows that people use WATSON as a surname"; and "[b]y failing to present any evidence that the surname significance is the primary significance, the Examining Attorney has failed to carry her burden and her refusal

8

must be reversed." Brief at p. 8. The examining attorney has not relied only on telephone directory listings and evidence that "merely shows that people use WATSON as a surname." Her evidence from the Internet shows several notable persons with the surname "Watson," some of whom applicant has deemed "famous." Also, her evidence shows large numbers of persons with the surname "Watson" and a high ranking in terms of frequency of "Watson."

In view of the foregoing, we reiterate that the examining attorney has set forth a prima facie case that "Watson" is primarily merely a surname. We do not find applicant's arguments to the contrary persuasive. Once the examining attorney has set forth a prima facie case, we look to applicant's evidence to see if applicant has rebutted the examining attorney's prima facie case.

Applicant argues that WATSON has a "myriad of meanings" - namely, as the name of one or more historical figures, as a given name and as a geographic location - and has submitted a large amount of evidence in its attempt to establish these meanings.

We turn first to applicant's argument that one meaning of "Watson" is that of an historical figure, and its reliance on *Lucien Piccard Watch Corp. v. Since 1868 Crescent Corp.*, 314 F. Supp. 329, 165 USPQ 459 (SDNY 1970)

(finding DA VINCI not primarily merely a surname because it primarily connotes Leonardo Da Vinci).  The "historical figure" applicant identifies in its brief is James Dewey Watson, "who, along with Francis Crick, discovered the helical structure of the deoxyribonucleic acid (DNA) molecule…."  Applicant states that "[j]ust as we could not have modern physics without the contributions of Sir Issac Newton, so too we could not have modern genetics without the contribution of James Watson."  Brief at p. 10.  Applicant also maintains – without any support - that "when considered in light of the purchasing public of [the WATSON] product – those in need of software to support bioanalytical drug development – it is clear that they would as quickly associate the name WATSON with James Watson …."  *Id*.

We are not persuaded that the relevant purchasing public would consider James Dewey Watson an historical figure.  Although the evidence shows that Mr. Watson has made a significant contribution to science in his work as one of two persons credited with discovering the helical structure of the DNA molecule, and has won a Nobel Prize for his work, neither this evidence nor any other evidence of record establishes that his achievements are so remarkable or so significant that he is an historical

figure. There is a difference between being an individual that has made an historically significant contribution to science and being an individual that has achieved such renown as to become an historical figure. Additionally, applicant has provided no evidence that purchasers of applicant's goods regard him as an historical figure. This is so whether we consider the average scientific or technical professional who might purchase applicant's identified goods, or even the individuals that applicant appears to argue are the actual prospective purchasers, i.e., those developing pharmaceutical products and concerned with genetic issues related to development of such products. All we have is applicant's argument on this point. We have no direct evidence that either the broader class of prospective purchasers indicated by applicant's identification or the specific class of asserted actual purchasers would make such an association. Nor do we have circumstantial evidence to support an inference of such association. Further, as the examining attorney's evidence demonstrates and as further discussed below, there are many persons with the surname "Watson"; the name is not unique to James Dewey Watson. Accordingly, we are not persuaded that even the subset of all prospective purchasers said to be applicant's actual purchasers – those who are involved

11

with "bioanalytical drug development" - would view the primary connotation of WATSON as James Dewey Watson.[5]

Applicant also maintains "[i]n addition to James Watson, there are numerous other famous Watsons including scientists, industrialists, athletes and statesman [having the name Watson].  A substantial, although by no means exhaustive, list was provided in Applicant's August 4, 2004 response to the Examining Attorney."  This list is a printout from s9.com bearing the heading "The Biographical Dictionary" which applicant submitted with its request for reconsideration.  It includes:

> Thomas Augustus Watson, "an American telephone pioneer" who assisted Alexander Graham Bell and was the leader of research and engineering for Bell Telephone Company;
>
> Thomas Sturges Watson, a U.S. golfer who has won the British Open, the Masters and the U.S. Open numerous times;
>
> John Broadus Watson, a U.S. behavioral psychologist;
>
> William Marvin Watson, U.S. administrator and Postmaster General; and
>
> James John Watson, former president and chairman of International Business Machines Corp.

---

[5] Applicant's computer software is not limited to the field of genetics.  Applicant's identification of goods states that the software is used for "analyzing, reporting, and tracking pharmaceutical drug study sample data for regulatory compliance."

Applicant has not established with its evidence that any of the sixteen individuals identified in the s9.com webpage would be considered "historical figures" to prospective purchasers of applicant's goods. Simply because an individual is mentioned on the s9.com website entitled "The Biographical Directory," and/or in the dictionary.reference.com website which was submitted by applicant with its response to the first Office action, and because the individual is notable in a particular field, does not establish that that individual is an historical figure. Additionally, it does not necessarily follow that if an individual is famous in a particular field, he or she is an historical figure with notoriety akin to, for example, Leonardo Da Vinci, as discussed in *Lucien Piccard Watch, supra*, which was cited by applicant as support for its argument.

Another problem with applicant's argument is that applicant is asserting that all of the sixteen persons listed in the s9.com printout, and possibly more, are historical figures. Applicant has argued that "the existence of the number of famous Watsons, when considered with all the evidence in the record, demonstrates that WATSON has such significance as other than a surname that it cannot be considered primarily merely a surname." Brief

at p. 11.  We disagree.  The "historical figure" cases discuss whether a particular surname is primarily associated with, and evocative of, a particular historical figure.  A surname that would not be evocative of a particular historical individual but, rather, would be more evocative of numerous individuals, does not qualify for registration as a historical name and is merely a surname of numerous individuals with varying degrees of historical significance.

The second non-surname significance that applicant ascribes to "Watson" is that of a given name.  In support of its argument, applicant has submitted webpages from ivillage.com showing that "Watson" is a boy's name of Teutonic/Anglo-Saxon origin; babynamesdirectory.com showing "Watson" as a baby boy's name;[6] babynames.com showing the name "Watson"; baby-names-plus.com showing "Watson" as a boy's name; bubbaboo.com showing "Watson" as a baby name; and thenamemachine.com showing "Watson" as a common male name from 1900 – 1920 (but not thereafter).  Also, applicant submitted a listing of thousands of names on

---

[6] Applicant has also submitted a printout from Goeff's Gender Guesser, www.cgi.sfu.ca, showing "Watson" as the 199th most common given name.  This webpage is from a foreign website; information about how common "Watson" is in a foreign country has no probative value as to how "Watson" would be perceived in the United States.

hundreds of pages taken from the "LexisNexis computerized research database" purportedly showing persons in numerous states having "Watson" as a given name.[7] According to applicant, the evidence shows "the number of people with WATSON as a given name [is] on the same scale as the Examining Attorney's evidence of WATSON as a surname." Brief at p. 12. Applicant does not identify an approximate total number of persons having the given name "Watson" and merely contends that there are "in excess of 3,000 Watson's [sic] in each [of] California and Florida alone." Brief at p. 12. We are not persuaded by applicant's argument or evidence but rather conclude that the evidence applicant maintains supports its claim that "Watson" is a given name is vague, has not been reviewed or accurately tallied, and in any case, would appear to be a far lower number than the number of surname uses. Additionally, applicant's evidence

---

[7] In footnote 1 of its request for reconsideration, applicant cautions that "Some of the database results may contain duplicate results or people with the surname WATSON. As such, these figures [set forth in a table summarizing the results broken down by state] are for general reference only and the database print-outs should be referenced for exact information." It is unfair to the examining attorney and the Board to "dump" hundreds and hundreds of pages of information and expect the Board and the examining attorney, with their limited resources, to ferret though such pages to verify the accuracy of the evidence as described in applicant's submissions to the Office. It is applicant's obligation to point to particular items of evidence that support its position, not to invite the examining attorney and the Board to search for it.

15

does not indicate that any famous person or person of significance in a particular field has the given name "Watson." This is to be contrasted with the large number of individuals who the examining attorney and even applicant point out are notable and have "Watson" as a surname. Thus, on balance, we find that the evidence presented by applicant demonstrates that the surname significance is far more dominant.

The third non-surname significance that applicant ascribes to "Watson" is geographic. Applicant has submitted a webpage from placesnamed.com that shows geographic locations in twenty-four states bearing the name Watson, and Watson Center in Mississippi. Also, applicant submitted an Internet article from miamitodaynews.com regarding Watson Island, Florida, discussing a proposed marina, "one of a plethora of projects planned for the 86-acre island just east of downtown Miami…."[8] Applicant's argument is not well taken. Most of the entries in the placesnamed.com submission for "Watson" do not indicate the population size. Those that do indicate the population show very small populations. For example, in 1990, the

---

[8] At p. 13 of its brief, applicant also references Brown University's Watson Institute for International Studies in Rhode Island. Watson Institute is not a geographic place.

placesnamed.com webpage shows that Watson, Illinois had a population of 646; Watson, Minnesota had a population of 211; and Watson, Missouri had a population of 137. See also the dictionary.reference.com webpage submitted by applicant with its response to the first Office action. These populations are minor and do not establish that the primary meaning of "Watson" is geographical. See *Harris-Intertype*, 186 USPQ at 239, fn.4, involving the mark HARRIS ("Harris, Arizona, is shown … to have zero population; Harris, Kansas, is shown with a population of 41; Harris, Minnesota, 559; Harris, Missouri, 174; and Harris, Oklahoma, 100."). There is no indication of Watson Center's population. Other than for Watson Island, Florida, applicant has not introduced any evidence of the significance or notoriety, if any, of these communities. As for Watson Island, the record does not reflect its population, and we do not assume that simply because Watson Island is proximate to Miami that it is a well-known geographic location likely to be impressed upon the consciousness of the consuming public. Further, as the examining attorney has noted, the fact that a term is shown to have some minor significance as a geographical term will not dissipate its primary significance as a surname. See *In re Hamilton Pharmaceuticals Ltd*., 27 USPQ2d 1939 (TTAB

1993). We point out too that it is common knowledge that places are often named after individuals. See *In re Champion International Corp.*, 229 USPQ 550 (TTAB 1985). Also, there is no persuasive evidence in the record that would indicate any significant recognition by the purchasing public of an association between applicant's mark and any of these geographic locations named "Watson" or with "Watson" as part of a place name.

Additionally, applicant argues that "past Trademark Office practice, while not binding, has shown a proclivity to treat WATSON as not so common as to be primarily merely a surname." Applicant has cited what it labels as "WATSON-nominative marks" that have been registered without a disclaimer or a claim of acquired distinctiveness. Applicant has also argued that "the PTO has consistently registered marks for words that have some surname significance and similar surname popularity to WATSON without a showing of acquired distinctiveness," noting marks containing "Hughes, Marshall, Fisher, Morris, Carter, and Murray." Brief at p. 14. The "WATSON-nominative" registrations are inapposite because they include additional wording and/or designs which understandably take such marks out of the ambit of Section 2(e)(4), and the remaining registrations are inapposite because they are for

18

different names, and many include additional wording and/or designs.  Whether a term sought to be registered is primarily merely a surname within the meaning of Section 2(e)(4) of the Trademark Act must necessarily be resolved on a case by case basis, taking into account a number of factual considerations.  *In re Sava Research Corp.*, 32 USPQ2d 1380 (TTAB 1994).  Cf. *In re First Draft, Inc.*, 76 USPQ2d 1183 (TTAB 2005) (Board determined registrability of author's pseudonym as a mark for a series of books on evidence of record, notwithstanding the applicant's submission of files from other registrations purportedly establishing an Office practice of registering such names).

Upon balance, therefore, three of the four factors bearing upon the issue favor a determination that the primary significance of the mark WATSON to the purchasing public for applicant's "computer software for use in laboratory information management, namely, software used in analyzing, reporting, and tracking pharmaceutical drug study sample data for regulatory compliance" is that of a surname; and the other factor is neutral.  Although applicant has demonstrated that the term "Watson" has some geographical and given-name significance, the record reflects that it is the surname significance of "Watson" which is far more common and which predominates.  We find,

19

in view thereof, that the examining attorney has presented evidence sufficient to establish prima facie that applicant's mark is primarily merely a surname within the meaning of Section 2(e)(4) of the statute and that applicant has failed to rebut such showing.

**DECISION:** The refusal to register the mark under Section 2(e)(4) of the Trademark Act is affirmed.