**EASTMAN KODAK COMPANY, Appellant,**

v.

**BELL & HOWELL DOCUMENT MANAGEMENT PRODUCTS COMPANY, Appellee.**

No. 92–1482.

United States Court of Appeals, Federal Circuit.

June 2, 1993.

Richard D. Rochford, Jr., Nixon, Hargrave, Devans & Doyle, of Rochester, NY, argued for appellant. With him on the brief was James D. Kole. Also on the brief was Kathleen F. Tranelli, Eastman Kodak Co., Rochester, NY.

Howard B. Rockman Welsh & Katz, Ltd., Chicago, IL, argued for appellee. With him on the brief was Kathleen A. White.

David Goldberg, Cowan, Liebowitz & Latman, P.C., of New York City, was on the brief for the amicus curiae, Xerox Corp.

Before MICHEL, Circuit Judge, SMITH, Senior Circuit Judge, and SCHALL, Circuit Judge.

MICHEL, Circuit Judge.

Eastman Kodak Company (Kodak) appeals from the decision of the Trademark Trial and Appeal Board (Board) of the Patent and Trademark Office (PTO) in an intent-to-use application proceeding under the Lanham Act, as amended by the Trademark Law Revision Act of 1988, 15 U.S.C. §§ 1051–1127 (1992),[1] *Eastman Kodak Co. v. Bell & Howell Document Management Prods. Co.*, Nos. 86,-083, 86,093, and 86,101 (TTAB June 8, 1992). In its decision, the Board denied Kodak's motion for summary judgment, granting summary judgment for Bell & Howell Document Management Products Company (B & H) on the issue of descriptiveness, and dismissing the oppositions "without prejudice to the filing of a petition to cancel the registration issued after a statement of use has been filed," *id.*, slip op. at 6. Because we hold that, in the circumstances of an intent-to-use application proceeding, the Board's actions are permissible under the statute, we affirm.

## BACKGROUND

On October 12, 1990, B & H filed intent-to-use applications, under 15 U.S.C. § 1051(b), to register the numbers "6200," "6800" and "8100" on the Principal Register as trademarks for microfilm reader/printers. After initial examination of the applications, the trademark examining attorney approved the applications for publication in the PTO's *Official Gazette*.

Section 1051(b) allows an applicant who alleges a bona fide intent to use a mark to file an application seeking registration on the Principal Register. If, upon examination, the mark appears registrable, the PTO publishes it for opposition. 15 U.S.C. § 1062(a). If no opposer is successful, the PTO issues a notice of allowance. *Id.* § 1063(b)(2). The applicant then has six months[2] in which to file a statement that verifies that the mark is in use in commerce, the date of first use in commerce, the goods and services in connection with the mark are used in commerce, and the manner in which the mark is being used. *Id.* § 1051(d)(1). The statement of use is then subject to another examination, in which the PTO considers how the mark is used and, if it is still satisfied that, as used, the mark is registrable, issues a certificate of registration. *Id.*

Kodak, a competitor of B & H in the manufacture and marketing of business equipment products, including microfilm reader/printers, timely filed a notice of opposition to registration of each of the three marks. Kodak alleged that the marks would be used solely as model designators for the reader/printers and therefore would be merely descriptive. Kodak argued that B & H had not shown that the marks had acquired secondary meaning and that, therefore, registration of the marks would be improper. The three opposition proceedings were consolidated before the Board.

B & H moved for summary judgment on the grounds that there were no genuine is-

---

1. Like J. Thomas McCarthy, *see, e.g.*, 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19.07 (3d ed. 1992), we refer to the current trademark statutory provisions as the "Lanham Act," even though the 1946 statute has been extensively amended, including in 1988.

2. The statute also provides for extensions of time for good cause. *See* 15 U.S.C. § 1051(d)(2).

sues of material fact regarding the alleged mere descriptiveness of its applied-for number marks and, alternatively, that Kodak had no standing to oppose B & H's applications. Kodak filed a cross-motion for summary judgment. The Board determined that Kodak did have standing to oppose and that conclusion is not contested in this appeal.

On the issue of mere descriptiveness, the Board stated that it "believe[s] that it is possible for a numerical designation, which functions only in part to designate a model or grade, to be inherently distinctive and registrable without a showing of secondary meaning." *Eastman Kodak,* slip op. at 5 (citing *Neapco Inc. v. Dana Corp.,* 12 USPQ2d 1746, 1748 (TTAB 1989)). Due to the nature of intent-to-use applications, the number marks at issue had not been used at the time of the opposition proceeding. Accordingly, the Board held that it could not determine whether the numerical designations "are merely descriptive or if they are registrable without a showing of secondary meaning." *Id.* The Board concluded that in such situations, where the descriptiveness issue could not be resolved until use had begun, the opposition should be dismissed without prejudice to the initiation of a cancellation proceeding against the mark if the mark is registered after the statement of use is filed. Consequently, the Board denied Kodak's motion for summary judgment, granted B & H summary judgment on the descriptiveness issue, and dismissed the oppositions without prejudice. As a result, B & H received a notice of allowance.

## DISCUSSION

The principal issue in this case is whether the Board's implied creation of a presumption in favor of the applicant for a numerical mark intended for use as more than a model designator is a reasonable interpretation of the Board's authority under the Lanham Act. We hold that it is.

Under the *Chevron* doctrine, established in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct.

2778, 81 L.Ed.2d 694 (1984), "[w]hen a court reviews an [administrative] agency's construction of the statute which it administers, it is confronted with two questions." *Id.* at 842, 104 S.Ct. at 2781. The first is whether Congress has directly addressed the precise question at issue. If so, then the agency "must give effect to the unambiguously expressed intent of Congress," *id.* at 843, 104 S.Ct. at 2782, and the court must, of course, review the agency's interpretation accordingly. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a *permissible* construction of the statute." *Id.* (emphasis added).[3] In order to uphold the agency's interpretation, the court need not conclude that it was the only permissible construction or even the construction the court would have reached on its own reading of the statute. *Id.* n. 11. The agency's interpretation must merely be "reasonable." *See id.* at 866, 104 S.Ct. at 2793; *see also Pauley v. BethEnergy Mines, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2524, 2535, 115 L.Ed.2d 604 (1991) (applying "reasonableness" standard); *IRS v. Fair Labor Relations Auth.,* 494 U.S. 922, 928, 110 S.Ct. 1623, 1627, 108 L.Ed.2d 914 (1990) (same); *Zenith Elec. Corp. v. United States,* 988 F.2d 1573, 1582–83 (Fed.Cir.1993) (same); *DeCosta v. United States,* 987 F.2d 1556, 1558 (Fed.Cir.1993) (same).

### I.

In the instant case, the Board's decision to grant B & H summary judgment and dismiss Kodak's opposition without prejudice, necessarily involved the Board's concluding that numerical designators are presumptively not merely descriptive under Lanham Act section 2(e), 15 U.S.C. § 1052(e), when applied for in an intent-to-use application under section 1(b), 15 U.S.C. § 1051(b). Section 1(b) sets forth the requirements for filing an intent-to-use application. *See* 15 U.S.C. § 1051(b). Section 2(e) precludes registration of a trademark on the Principal Register that, *inter alia,* "[c]onsists of a mark which,

---

**3.** Elsewhere, the court uses the word "reasonable," interchangeably with "permissible." *See*

*Chevron,* 467 U.S. at 866, 104 S.Ct. at 2793.

... when used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them." *Id.* § 1052(e). The statute on its face neither requires nor precludes the Board's interpretation.

Nor does the legislative history of the Trademark Law Revision Act of 1988 speak directly to this issue. The legislative history does demonstrate that Congress intended most marks applied for in an intent-to-use application (intent-to-use mark) to be reviewed for descriptiveness in the initial examination/pre-use stage of the intent-to-use application process. For example, Senate Report 515 states that "the absence of specimens at the time the application is filed will not affect examination on numerous fundamental issues of registrability (that is, descriptiveness, geographic or surname significance, or confusing similarity)." S.Rep. No. 515, 100th Cong., 2d Sess. 32 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577, 5595. With respect to the examination of the statement of use, which is filed after a notice of allowance has been issued, the Report states:

> The Patent and Trademark Office's examination of the statement of use will be only for the purpose of determining issues that could not have been fully considered during the initial examination of the application, that is, whether the person filing the statement of use is the applicant, whether the mark as used corresponds to the drawing submitted with the application, whether the goods or services were identified in the application and not subsequently deleted, and *whether the mark, as displayed in the specimens or facsimiles, functions as a mark.*

*Id.* at 34, 1988 U.S.C.C.A.N. at 5596 (emphasis added). As the highlighted phrase shows, Congress did intend the PTO to confirm, after the filing of the statement of use, that the intent-to-use mark, as displayed and used, actually "functions as a mark." Indeed, the statute provides: "Subject to *examination and acceptance* of the statement of use, the mark shall be registered.... Such examination may include an examination of the factors set forth in subsections (a) through (e) of section 1052." 15 U.S.C.

§ 1051(d)(1) (emphasis added). And the legislative history itself emphasized that "[t]his provision [of the statute] permits the [PTO] to raise issues of registrability that might not be evident until the applicant makes available specimens showing the mark as used and/or clarifying the nature of the goods or services involved." H.R.Rep. No. 1028, 100th Cong., 2d Sess. 9 (1988). Thus, the statute and legislative history provide for the situation where, as here, the question of mere descriptiveness cannot be answered until after use has begun.

Furthermore, it is clear from the legislative history that Congress, for policy reasons, chose to sequence the opposition process before the use of an intent-to-use mark had commenced. *See* S.Rep. No. 515 at 32, 1988 U.S.C.C.A.N. at 5595 ("Subjecting an intent-to-use application to the opposition process before the applicant makes use of its mark is essential if the system is to achieve its goal of reducing uncertainty before the applicant invests in commercial use of the mark."). Accordingly, Congress knew that some issues of registrability could not be decided in opposition proceedings and would therefore have to be addressed in the post-use PTO examination or challenged in a cancellation proceeding after the mark was registered.

Thus, under step one of our inquiry under the *Chevron* doctrine, the Board's interpretation does not contravene *any* clear and unambiguous statutory meaning.

## II.

We further conclude, under step two of the *Chevron* doctrine, that the Board's construction is a reasonable interpretation of the Lanham Act.

Kodak argues, however, that the Board's interpretation is unreasonable because it would preclude asserting mere descriptiveness as a basis for denying registration of both word and number marks in intent-to-use applications. This argument is unavailing for several reasons. First, there are words and phrases that, as applied to certain goods, the examining attorney in the initial examination could certainly find to be prima facie merely descriptive. For example, an

examining attorney could easily find that the term "reader/printer" applied to the microfilm reader/printers at issue here would be merely descriptive or that the term "slow-cooker" was merely descriptive of a Dutch oven. Furthermore, the examining attorney may also find numbers that are intended for use *solely* as model designators to be prima facie merely descriptive. *Cf. J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1469, 228 USPQ 206, 207 (10th Cir. 1985) (common law trademark infringement action in district court).

Second, Kodak's argument must assume that under circumstances such as these, after a notice of allowance is issued, intent-to-use marks will automatically be passed to registration. However, the statute provides for another examination of the mark after the statement of use is filed. 15 U.S.C. § 1051(d)(1) ("Subject to examination and acceptance of the statement of use, the mark shall be registered in the Patent and Trademark Office...."). Moreover, the statute contemplates the need, in certain circumstances, for a complete reexamination: "Such examination may include an examination of the factors set forth in subsections (a) through (e) of section 1052." *Id.* In addition, the trademark regulations, promulgated by the PTO pursuant to authority granted by statute, *see id.* § 1123, provide that "[a] timely filed statement of use which meets the minimum requirements specified in paragraph (e) of this section *will be* examined in accordance with §§ 2.61 through 2.69." 37 C.F.R. § 2.88(f) (emphasis added). Thus, once the examining attorney establishes that the statement of use has met the minimum requirements set forth in 37 C.F.R. § 2.88(e) (the prescribed fee, at least one specimen of use, and a declaration by the applicant that the mark is in use in commerce), the regulation requires that the examining attorney reexamine the mark under the standards of the initial examination (37 C.F.R. §§ 2.61–2.69).

Furthermore, the Trademark Examination Guide 3–89 (TEG) sets forth a standard for this examination of the statement of use: "The [PTO] will not issue any requirements or refusals concerning matters which could have or should have been raised during initial examination, unless the failure to do so in initial examination constitutes a clear error." TEG § A.9.b. The TEG defines "clear error" as "an error which, if not corrected, would result in issuance of a registration in violation of the Act." *Id.* Thus, the examining attorney's examination standard is for legal error and is not the deferential clearly erroneous standard due, for example, fact-findings of a district court. Accordingly, the examining attorney essentially must make a *de novo* determination on any issue that would affect the legal correctness of registration.[4]

The descriptiveness of the manner of use of numerical designators, such as the marks challenged in these oppositions, is such an issue. This is so even though the TEG singles out descriptiveness in its discussion of the extent of reexamination of the mark: "[T]he examining attorney may not issue a refusal under Trademark Act Section 2(e)(1), 15 U.S.C. Section 1052(e)(1), unless the refusal is dictated by changed circumstances from the time of initial examination *or the failure to issue such a refusal would constitute clear error.*" *Id.* (emphasis added). In a case such as this, however, as the Board acknowledged, the issue of whether the numerical marks are merely descriptive cannot be resolved until they have been used, because it is the manner in which the numerical marks are used that renders them merely descriptive (solely model designators) or not. Thus, the situation delineated in the TEG of when "evidence that the mark is merely descriptive was available during initial examination," *id.*, is not present here. The use of the mark may constitute "changed circumstances" from the information which the examining attorney could analyze in the initial examination. But even if the circumstances are not considered changed, unless the applicant originally claims use of the mark as purely a model designator, the examining attorney can make a determination of de-

---

4. Indeed, another provision of the TEG provides that "Examination of the statement of use follows the same procedural course as the initial examination of the application under Trademark Rule 2.61 *et seq.*, 37 C.F.R. Section 2.61 *et seq.*" TEG § A.9.a.

scriptiveness of numerical designators only after the statement of use has been filed. If, upon such further examination, the examining attorney determines that the mark is used in a merely descriptive manner, then the examining attorney must refuse registration because registration of a merely descriptive mark on the Principal Register would constitute "issuance of a registration in violation of the Act," *id.*—the TEG's definition of "clear error," *id.*

There is a serious question of whether the presumption created by the Board in favor of numerical designators would be lawful if the examining attorney, after the statement of use and specimens are filed, were to approve the mark for registration without serious inquiry as to whether, as used, the mark functions as a trademark under the provisions of section 2. Such a *de novo* determination under section 2 appears to be the only way the practical presumption created by the Board could be sustainable under *Chevron.* Therefore, any other interpretation of the applicable procedure would be of questionable validity as long as the Board maintains this presumption.

Furthermore, Kodak's contention that the Board's interpretation of the statute "in effect eliminates Lanham Act § 2(e) as a basis for rejecting an intent-to-use application," is unavailing because Kodak's analysis would eliminate the use of intent-to-use applications for any numerical mark that could possibly be used as a model designator, in whole or in part. However, the statute does not exclude from intent-to-use applications any type of mark. Because Kodak is incorrect that the Board's decision precludes the use of descriptiveness as a basis for rejecting intent-to-use applications and because Kodak's interpretation would preclude use of intent-to-use applications for such numerical marks in direct contravention of the statute, certainly the Board's failure to adopt such an interpretation is not unreasonable.

Kodak further asserts that the Board's interpretation is unreasonable because it allegedly creates a different standard for registrability for intent-to-use applications from use-based applications with regard to descriptiveness, contrary to statutory design. Kodak is correct that the statute provides for the same substantive requirements to be met for intent-to-use and use-based applications. *Compare* 15 U.S.C. § 1051(a) (requirements for use-based applications) *with id.* § 1051(b)–(d) (requirements for intent-to-use applications). However, Kodak's argument misunderstands the character of the Board's action. The Board merely adopted a presumption that a numerical mark, which may be used at least in part as a model designator, is not merely descriptive in the absence of evidence of how it is actually used. Once B & H files its statement of use with specimens of actual use, the PTO will refuse registration if the marks are, indeed, used in a merely descriptive fashion, just as the PTO would deny such a mark registration in a use-based application. *See* 37 C.F.R. § 2.88(f) ("A timely filed statement of use which meets the minimum requirements specified in paragraph (e) of this section will be examined in accordance with §§ 2.61 through 2.69."); TEG § A.9.e. ("The same standards applied in use applications in determining whether the specimens support use of the applied-for mark apply to specimens in intent-to-use applications."); *id.* § A.9.f. ("The examining attorney should issue requirements and refusals, as appropriate, based on the examination of the specimens, subject to the same standards which govern the examination of specimens in any other phase of examination."). Thus, the standard that the PTO applies in either case is the same—only the timing of such review is different. Accordingly, the Board's interpretation is not unreasonable under this analysis.[5]

---

**5.** Kodak asserts that *Neapco, Inc. v. Dana Corp.,* 12 USPQ2d 1746 (TTAB 1989), "must be limited to situations in which, as in *Neapco,* the Board is able to consider evidence that the model designator in actual use serves a trademark (source-indicating) function." Kodak argues that because B & H cannot prove use as a trademark in the initial examination, B & H should be denied

registration at that point. However, the Board cannot consider "evidence that the model designator *in actual use* serves a trademark ... function" (emphasis added) until the mark is used. Under the TEG, the examining attorney examines the specimens of use "to confirm that the specimens show use of the subject matter as a trademark or service mark on or in connection with

Kodak contends that the difference in timing is sufficiently prejudicial to render the Board's interpretation unreasonable. Kodak argues particularly that the Board's decision relegates such questions of mere descriptiveness to a post-registration cancellation proceeding. Kodak maintains that the delay is prejudicial to it because in a cancellation proceeding, the registration at issue enjoys a presumption of validity. Kodak's argument is misplaced because, although the registration is considered prima facie valid, the challenger's burden of proof in both opposition and cancellation proceedings is a preponderance of the evidence. 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 20.16 (3d ed. 1992).

Furthermore, as shown above, the legislative history clearly shows that Congress considered the problem of placing the opposition proceeding of intent-to-use marks before actual use had occurred, but still *chose* to position the proceedings at that point in time for policy reasons. *See* discussion *supra* part I. And Congress codified this arrangement by (1) providing for the Commissioner, after initial examination, to publish the intent-to-use mark for opposition if it "*would be* entitled to registration *upon* the acceptance of the statement of use required by section 1051(d) of this title," 15 U.S.C. § 1062(a) (emphasis added), (2) providing for only thirty days from publication [6] for a party to oppose registration of the mark, *id.* § 1063(a), and (3) providing that if the applicant prevails in the opposition proceeding, "a notice of allowance [7] shall be issued to the applicant if the applicant applied for registration under section 1051(b)," *id.* § 1063(b)(2). Thus, the statute makes clear that the opposition proceedings occur before the statement of use is filed by the applicant, and any prejudice flowing to Kodak from this arrangement cannot render the Board's interpretation an unreasonable one in light of the statute.[8]

the goods or services identified in the statement of use." TEG § A.9.f. Thus, *Neapco* does apply in this case—just at the second stage in the two-stage examination process.

6. The statute also provides for extensions of time for good cause. *See* 15 U.S.C. § 1063(a).

7. A notice of allowance, rather than a certificate of registration, is issued, after the initial examination and prior to the applicant's filing of a statement of use, unless the mark was successfully opposed. *Id.* § 1063(b)(2). If the examining attorney, after further examination, accepts the applicant's later-filed statement of use, then the certificate of registration "shall be issued." *Id.* § 1051(d)(1).

8. Kodak argues that the timing is also prejudicial because not enabling Kodak to challenge the marks until a post-registration cancellation proceeding allows an applicant to apply for several marks and tie them up for a period of months or years through the extension periods for filing a statement of use, *see id.* § 1051(d)(2), even though the marks may ultimately be found merely descriptive. This argument fails to acknowledge, however, certain important requirements the applicant must meet during the application process.

For example, the applicant must specify, in the original application,

applicant's bona fide intention to use the mark in commerce, the goods on or in connection with which the applicant has a bona fide intention to use the mark and the mode or manner in which the mark is intended to be used on or in connection with such goods, including a statement to the effect that the person making the verification believes himself or herself, or the firm, corporation, or association in whose behalf he or she makes the verification, to be entitled to use the mark in commerce, and that no other person, firm, corporation, or association, to the best of his or her knowledge and belief, has the right to use such mark in commerce....

*Id.* § 1051(b)(1)(A). In addition, with each request for extension (after the first), the applicant must provide "a verified statement that the applicant has a continued bona fide intention to use the mark in commerce and specifying those goods or services identified in the notice of allowance on or in connection with which the applicant has a continued bona fide intention to use the mark in commerce." *Id.* § 1051(d)(2). Thus, the applicant, in effect, verifies at the time of application that he or she believes that the mark is registrable. Under Kodak's contention, the applicant would have to intentionally misrepresent his or her belief when applying for the mark. It is not unreasonable for the PTO to assume that each application is bona fide until proven otherwise.

Furthermore, extensions are only granted (after the first) "upon a showing of good cause by the applicant." *Id.* To show good cause, the applicant must provide:

(1) An allegation that the applicant has not yet made use of the mark in commerce on all the goods or services specified in the notice of allowance ..., and

(2) A statement of applicant's ongoing efforts to make use of the mark in commerce on or in

Because the Board's interpretation is consistent with the language and purposes of the statute, we hold that it is reasonable.

### III.

Kodak argues that the Board erred in denying it summary judgment because Kodak believes that B & H's intent-to-use marks will be used as model designators, rendering them merely descriptive and therefore not registrable without a showing of secondary meaning. Kodak further asserts that it submitted evidence to the Board supporting this contention. Even if we assume that Kodak's evidence proves that B & H's numerical marks will be used as model designators, this conclusion is not dispositive of the descriptiveness issue as Kodak claims. In order for B & H's marks to be found merely descriptive, they must be used *solely* as model designators and not in any source-indicating function. As part of its intent-to-use application, B & H necessarily must have asserted a bona fide intent to use each number as a trademark, *see* 15 U.S.C. § 1051(b)(1), and not, therefore, solely as model designators. And prevailing Board authority establishes that "[d]epending upon the nature and *manner of use*, it is possible for an alphanumeric designation, which functions only in part to designate model or grade, to be inherently distinctive, and hence not require a showing of secondary meaning in order to be protected as a trademark." *Neapco*, 12 USPQ2d at 1748 (citing *In re Clairol Inc.*, 457 F.2d 509, 510, 173 USPQ 355, 356 (CCPA 1972)) (emphasis added). Thus, even if Kodak is correct that the intent-to-use marks will be used as model designators, the law does not support Kodak's

ultimate conclusion that therefore the marks will *necessarily* be merely descriptive. Indeed, the PTO has already granted B & H registration of one numerical (7500) and one alphanumeric mark (4000R), used in connection with microfilm reader/printers, without proof of secondary meaning. *Eastman Kodak*, slip op. at 4.

### CONCLUSION

Based on the foregoing, the Board's decision is

**AFFIRMED.**

---

connection with each of the goods or services specified in the verified statement of continued bona fide intention to use required under paragraph (b) of this section. Those efforts may include, without limitation, product or service research or development, market research, manufacturing activities, promotional activities, steps to acquire distributors, steps to obtain required governmental approval, or other similar activities. In the alternative, a satisfactory explanation for the failure to make such efforts must be submitted.

37 C.F.R. § 2.89(d). Accordingly, the applicant may not indefinitely extend the filing of a statement of use—the applicant must provide the PTO

with substantive information to satisfy the PTO that the applicant has good cause to delay such a filing.

Thus, in order for an applicant to tie up several merely descriptive marks for a period of months or years, the applicant would have to mislead the PTO through several stages of the process—an unlikely event and one with potentially severe consequences for the applicant. Furthermore, as mentioned above, such timing of Kodak's challenge to the mark was intended by Congress. Consequently, the Board's interpretation does not contravene the statute's meaning and purpose of the timing of the proceedings to challenge an intent-to-use mark.