Hearing:                                    Paper No. 68
November 16, 1999                           JQ
THIS DISPOSITION IS CITABLE AS PRECEDENT
OF THE TTAB    JULY 19, 00

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

Michael S. Sachs, Inc.
v.
Cordon Art, B.V.
_____

Opposition No. 95,655
to application Serial No. 74/108,924
filed on October 22, 1990
_____

Stephen P. McNamara of St. Onge Steward Johnston & Reens for
Michael S. Sachs, Inc.

Patrick T. Perkins and Allan Zelnick of Fross Zelnick
Lehrman & Zissu for Cordon Art B.V.
_____

Before Quinn, Bucher and Holtzman, Administrative Trademark
Judges.

Opinion by Quinn, Administrative Trademark Judge:

     An application was filed by Cordon Art B.V. to register

the mark M.C. ESCHER for a variety of goods as follows:

Class 9
Magnetic data carriers, data processors; computers; and
holograms.

Class 14
Precious metals and their alloys; costume jewelry, jewelry
of precious metals and stones; precious stones; clocks and
chronometric instruments.

Class 16
Printed matter, namely, pamphlets and booklets relating to the artwork of M.C. Escher; bookmarkers; bookbinding material, namely, tape and cloth; photographs; stationery; writing paper and envelopes; artists' materials, namely, drawing paper and aquarelle paper, chalks and crayons; paint brushes, office requisites, namely, pen holders, fountain pens, propelling pencils, India rubber erasers, chalks and crayons, colored chalks and crayons, staplers, stamp books, file folders, mail trays, perforators, paperclip holders, pencil sharpeners, office agenda books, directories, felt pens and markers; plastic material for packaging; playing cards and printing blocks.

Class 24
Bed and table covers.

Class 25
Clothing, footwear and headgear, namely, tee-shirts, sweaters, trousers, skirts, dresses, shirts, socks, jackets, coats, polo shirts, hats and caps.

Class 27
Carpets; rugs; mats, namely, door mats and bath mats; linoleum for covering existing floors; and non-textile wall hangings.

Class 28
Games, namely, card games, board games, computer game equipment containing memory devices, namely, discs; and decorations for Christmas.

The application is based, pursuant to Section 44(e) of the Act, on a Benelux registration, Registration No. 474436, issued on February 28, 1990.[1]

Michael S. Sachs, Inc. has opposed registration. In its second amended notice of opposition, opposer alleged

---

[1] Application Serial No. 74/108,924, filed October 22, 1990. The application states that "M.C. Escher" is the name of a deceased individual.

that the mark sought to be registered is primarily merely a surname; that the mark is generic and/or merely descriptive of goods bearing the artwork of M.C. Escher; that the mark is deceptively misdescriptive of goods not bearing the artwork of M.C. Escher; that the term M.C. ESCHER does not function as a mark to distinguish applicant's goods from the goods of others; that opposer has priority of use in connection with original artworks and other goods bearing the artworks of M.C. Escher; and that applicant improperly filed for registration to prevent others from reproducing artworks of M.C. Escher and identifying such reproductions of the artist.[2]

Applicant has denied the allegations of the amended pleading.

The record consists of the pleadings; the involved application file; trial testimony, with related exhibits, taken by each party; applicant's responses to certain discovery requests, a complete printed publication and

---

[2] Opposer also raises for the first time in its brief issues of applicant's lack of ownership of the mark, and likelihood of confusion. Inasmuch as the issues neither were pleaded nor tried by the parties, they will be given no consideration. The Chicago Corp. v. North American Chicago Corp., 20 USPQ 1715, 1717 at n. 5 (TTAB 1991). Opposer also alleged in its notice of opposition that applicant misused the federal trademark registration symbol. The Board, in an order dated October 22, 1996, entered summary judgment in applicant's favor on this issue, finding that applicant did not use the registration symbol fraudulently. No further consideration of this issue need be given.

excerpts from other printed publications, and excerpts retrieved from the NEXIS database, all introduced by way of opposer's notices of reliance; and portions of a discovery deposition, opposer's responses to certain discovery requests, excerpts from printed publications, and third-party registrations, all made of record by applicant's notice of reliance. The parties filed briefs and both were represented by counsel at an oral hearing held before the Board.

## Evidentiary Objections

Before turning to the merits of the opposition, we must direct our attention to evidentiary matters raised by applicant.[3]

Applicant has objected to Exhibit D to opposer's first notice of reliance. The exhibit consists of responses to requests for production of documents. Opposer failed to file a direct response to this specific objection. Accordingly, the objection is deemed conceded, and the responses are stricken.

As to opposer's exhibit nos. 63-66, and 67, applicant asserts that this properly discoverable material was not produced during discovery and that, therefore, opposer should be precluded from relying on it at trial. Opposer,

4

in its reply brief, does not dispute the contention that these documents fell within applicant's discovery requests, but were not produced during discovery. In view thereof, applicant's objection is sustained and the exhibits are stricken.[4]

Exhibit 72 is deemed admissible and has been considered.

Lastly, applicant has objected to Exhibit C to opposer's third notice of reliance. Exhibit C consists of a printout retrieved from the Internet showing telephone listings of 417 individuals with the surname "Escher."

We agree again with applicant that this material should have been produced during discovery.[5]

More significant in this instance, however, is applicant's contention that this printout retrieved from the Internet does not qualify as a printed publication under Trademark Rule 2.122(e). The Board has stated that "[t]he element of self-authentication which is essential to qualification under Rule 2.122(e) cannot be presumed to be

---

[3] The Board, in an order dated July 8, 1999, denied opposer's motion to strike the excerpts from Mr. Sachs' discovery deposition made of record by applicant's notice of reliance.

[4] We hasten to add that even if these exhibits were considered, they would not compel a different result in this case.

[5] In saying this, we note that Exhibit A, consisting of photocopies of actual telephone directory listings, was produced during discovery.

capable of being satisfied by Internet printouts."
Raccioppi v. Apogee Inc., 47 USPQ2d 1368, 1370 (TTAB 1998).
Accordingly, introduction of Exhibit C by way of a notice of
reliance is improper, and this exhibit has not been
considered in reaching our decision.[6]

### The Parties

"M.C. Escher" refers to the deceased Dutch artist,
Maurits Cornelis Escher, who lived from 1898 to 1972.  The
artist created original prints, drawings, watercolors and
constructed objects which have been exhibited throughout the
world.

According to the testimony of Michael Sachs, opposer's
president and sole shareholder, opposer is engaged in the
purchase and sale of original works of art, including
prints, drawings, watercolors, constructed objects, printing
plates and photographs.  Opposer deals almost exclusively
with the works of art of M.C. Escher, having made its first
purchases of Mr. Escher's art at auctions in 1968-69.  In a

---

[6] Opposer, in its reply brief, raises for the first time
objections to Exhibits D and E introduced by applicant's notice
of reliance.  Opposer "submits that if its Exhibits are stricken
from the record, then Opposer similarly objects to Applicant's
newly proposed evidence," but that if opposer's objected-to
evidence is allowed in, then "Opposer will withdraw its
objection."  Opposer's "tit-for-tat" objections, even if well
taken on the merits, are untimely and deemed to be waived.
Opposer failed to raise any such objections in it main brief on
the case, but rather treated the exhibits as properly of record.
It was not until it responded to applicant's objections that
opposer raised its objections.  Accordingly, opposer's objections
are denied.

self-described "unusual and unique" transaction in 1980,

opposer purchased 85-90 percent of Mr. Escher's works of

art.   Opposer's collection numbers close to 3,000 works, with an estimated worth of $35-$38 million, and opposer's annual sales of such works in 1993-1995 totaled several hundreds of thousands of dollars.[7]   Sales are generally made to individual collectors and dealers.   Opposer has used the names ESCHER and M.C. ESCHER in promoting its sales by placing advertisements in art magazines, and in publications such as *The Wall Street Journal* and *The New York Times*.

Applicant is a Netherlands corporation and is the owner, by assignment on September 21, 1989 from the estate of Mr. Escher, of all rights, including trademark rights, in the name and mark M.C. ESCHER.   Applicant also is the owner of all copyrights in the works of art of M.C. Escher.

We turn now to a discussion of the various grounds for opposition.

### Failure to Function as a Trademark

To the extent that opposer's arguments encompass a claim that applicant does not intend to use M.C. ESCHER in the manner of a trademark for applicant's goods, this issue cannot be determined at this juncture.   When this matter came up on summary judgment, the Board stated the following:

> [T]he determinative factor as far
> as registrability is concerned is the
> manner in which the mark is actually
> used, once use commences.  Here, it does

---

[7] The specific dollar amounts have been designated as "confidential."

8

not appear that applicant has made use of M.C. ESCHER on goods in the United States. In the absence of evidence of actual use of M.C. ESCHER on goods in the United States, we are unable to determine this issue. Evidence relating to the manner in which applicant uses M.C. ESCHER outside of the United States is not relevant to this issue.

If applicant commences use of M.C. ESCHER in the United States prior to trial, and opposer is able to offer evidence as to the manner of applicant's use, the Board may then determine the issue of whether applicant uses M.C. ESCHER as a trademark. However, if applicant has not commenced use of M.C. ESCHER in the United States prior to trial, and opposer is therefore unable to present evidence on this issue, the opposition must be dismissed as to this claim, without prejudice to the filing of a petition to cancel the registration after a statement of use has been filed. See Eastman Kodak Co. v. Bell & Howell, 23 USPQ2d 1878 (TTAB 1992), aff'd, 994 F.2d 1569, 26 USPQ2d 1912 (Fed. Cir. 1993).

In view of the above, and inasmuch as the record is devoid of any evidence of applicant's use of M.C. ESCHER on its goods in the United States, this portion of the opposition is dismissed without prejudice.[8]

---

[8] As a general comment, we would point out that the name of an artist, in addition to identifying the artist, may serve a trademark function if it identifies the source of a product and distinguishes it from the goods of another. In re Wood, 217 USPQ 1345 (TTAB 1983). See also: In re Grandma Moses Properties, Inc., 117 USPQ 366 (Com'r Pats 1958)[GRANDMA MOSES functions as a trademark and is registrable for framed fabric prints which are not made or designed by the artist of the same name, but which are made by designers working from, adapting, and stylizing parts of artist's works; the prints are not reproductions of the works

<u>Primarily Merely a Surname</u>

Opposer alleges that M.C. ESCHER is primarily merely a surname under Section 2(e)(4) of the Trademark Act. Applicant, in paragraph five of its answer to the second amended notice of opposition, admitted that "Escher" is a surname. Applicant goes on in its brief to concede "[t]hat there is no dispute that 'Escher' is a surname." (brief, p. 16) Applicant contends, however, that the mark M.C. ESCHER exclusively identifies a particular individual, namely the Dutch artist, "unarguably a figure of exceptional fame and historical significance." (brief, p. 13) Thus, applicant argues, M.C ESCHER is not primarily merely a surname due to the fact that the primary significance of the name is that of the particular Dutch artist.

Opposer's admissible evidence bearing on this issue consists of three "Escher" listings in telephone books and five NEXIS excerpts showing references to individuals with the surname of "Escher."[9]

Applicant has countered by referring to the evidence of record showing that M.C. Escher is an artist of considerable fame.

Indeed, given Mr. Sachs' testimony bearing on the fame of the Dutch artist, opposer hardly is in a position to

of the artist although they retain the "primitive flavor" of the artist's works].

dispute M.C. Escher's fame in the world of art. Mr. Sachs testified that the exhibitions of Mr. Escher's art tend to break attendance records and that the art appeals to a broad spectrum of people. According to Mr. Sachs, opposer has actively promoted public knowledge of the art of M.C. Escher by way of advertising "extensively," lending art works for exhibitions, providing photographs of reproductions and talking to laypersons and professional writers about Mr. Escher's art. Mr. Escher's original works of art can sell for large sums of money. Mr. Escher has been the subject of articles in the press, as shown by the NEXIS evidence introduced by applicant. In addition, the record includes a coffee-table book titled "M.C. Escher--His Life and Complete Works."

The test to be applied in determining whether a mark is primarily merely a surname is its primary significance to the purchasing public. See, e.g., In re Champion International Corp., 229 USPQ 550 (TTAB 1985). It has been stated that the use of a first name initial followed by a surname reinforces, rather than diminishes, the surname significance of a term. In re I. Lewis Cigar Mfg. Co., 205 F.2d 204, 98 USPQ 265 (CCPA 1953)[S. SEIDENBERG & CO.'S is primarily merely a surname]; and In re Nelson Souto Major

---

[9] A sixth excerpt appears to refer to the Dutch artist.

Piquet, 5 USPQ2d 1367 (TTAB 1987)[N. PIQUET in form of a signature is primarily merely a surname].

As noted above, applicant acknowledges, and the record shows, that "Escher" is a surname. Nonetheless, we agree with applicant that the mark M.C. ESCHER names a specific individual of considerable renown, and are persuaded that the mark "M.C. ESCHER" is not primarily merely a surname as contemplated under Section 2(e)(4) of the Act. The ample evidence of record bearing on the fame of the Dutch artist convinces us that the primary significance of M.C. ESCHER is that artist. This primary significance far outweighs the surname significance.[10] See, e.g., Lucien Picard Watch Corp. v. Since 1968 Crescent Corp., 314 F.Supp. 329, 165 USPQ 459 (SDNY 1970).

This case is distinguishable from In re I. Lewis Cigar Mfg. Co., supra. Unlike the situation there, the addition of the initials "M.C." to the surname "Escher" in the present case does not reinforce the surname significance. Rather, the mark in its entirety conveys the impression that it is a personal name, namely, that of the well known Dutch artist. See: In re Piquet, supra at 1368-69 (dissent).

---

[10] We recognize that the second amended notice of opposition supercedes the first amended pleading. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §1476. However, we cannot help noting, in passing, opposer's allegation in its first amended notice of opposition that "[t]he primary significance of the term 'M.C. Escher' is as the name of the Dutch graphic artist, now deceased."

The mark M.C. ESCHER would no more be perceived as primarily merely a surname than the personal names P.T. Barnum, T.S. Eliot, O.J. Simpson, I.M. Pei and Y.A. Tittle.

In view of the above, this portion of the opposition is dismissed with prejudice.

### Mere Descriptiveness/Genericness

Opposer alleges that the matter sought to be registered, M.C. ESCHER, describes the artist who originally created the works of art intended to be reproduced on the various products listed in the application. According to opposer, "'M.C. Escher' tells the consumer who the artist was that created the images that are applied to Applicant's goods." (brief, pp. 4-5) Mr. Sachs further testified that the Dutch artist's works of art are referred to as "Eschers."

Applicant counters by arguing that opposer's claim must fail because there is no evidence of applicant's use of the mark on the specific goods identified in the application and that, therefore, the merits of the claim cannot be evaluated. Applicant argues that "M.C. ESCHER describes only the deceased artist," and "does not describe the goods or any feature of them." Because of the artist's popularity and unusual style, applicant contends that the mark is just suggestive, calling to mind images that are distinctive,

representational, mind-bending, eye-popping, dimensional optical illusions.

In the absence of use of the mark in this country, we are extremely hard pressed to evaluate this issue in any meaningful way.[11]  As indicated earlier in this decision, an artist's name on an original work of art may function as a trademark.  In re Wood, supra.  Thus, the name of an artist is presumptively not merely descriptive.  While we intuitively suspect that the value of applicant's mark is logically tied to products bearing reproductions of Mr. Escher's works of art, there simply is no evidence of how the mark will be used.  It may be that a product has the "look and feel" of something M.C. Escher might have produced, yet not bear any reproduction or image from his works of art.  See:  In re Grandma Moses Properties, Inc., supra.  Indeed, the record is devoid of any evidence regarding an industry practice that goods of the type listed by applicant are of the kind that would bear reproductions of an artist's works of art.  However logical it may seem, it is difficult to base a holding of mere descriptiveness on such speculation.  See:  Eastman Kodak Co. v. Bell & Howell,

---

[11] Opposer concentrates its arguments on two of the items listed in the identification, namely "pamphlets and booklets relating to the artwork of M.C. Escher."  Applicant, in its brief, has offered to delete these specific items from the identification. The Board finds, however, that in the absence of actual use on these goods, no informed decision on this issue can be rendered.

supra.  Thus, we decline to decide the claim on the merits at this juncture.

In any event, even assuming arguendo that, as opposer contends, the goods will bear reproductions and images of M. C. Escher's art, we still do not believe that the mark would be merely descriptive of the listed goods.  As the Board held in In re Wood, supra, the name of an artist may be inherently distinctive as applied to the artist's original works of art.  We see no reason why an artist's name also would not be inherently distinctive as applied to products which bear reproductions or images from the artist's works of art.  And opposer has not cited any cases on point which would persuade us to hold differently.  Contrary to opposer's arguments, we find that such use of the mark would not be merely descriptive, but rather would be as a source identifier.  Thus, we are not surprised that the record reveals that the Office has issued similar registrations of artists' names for a variety of goods.

Because we cannot evaluate the claims of mere descriptiveness and genericness in view of the lack of evidence of use, this portion of the opposition is dismissed without prejudice.

### Deceptive Misdescriptiveness/Deceptiveness

With respect to deceptive misdescriptiveness, we view this claim as the opposite side of the same coin.  Again, in

the absence of evidence of use, that is, how the mark is actually used in commerce, this issue is not ripe for any meaningful analysis on the merits. Having said this, we view it as quite unlikely that the artist's name would be used on items that do not have some connection with the art and images created by M.C. Escher. We simply have no idea how the mark M.C. ESCHER will be used on applicant's goods and, thus, we are unable to properly ascertain how the purchasing public likely would perceive the mark.

This portion of the opposition is dismissed without prejudice.

The deceptiveness claim under Section 2(a) is summarily dismissed. Applicant in its brief made the point that this claim was not asserted in the second amended notice of opposition, a fact not disputed by opposer in its reply brief. Indeed, a review of this amended pleading shows no Section 2(a) deceptiveness claim. Further, there clearly was no trial of this issue as contemplated by Fed. R. Civ. P. 15(b). Accordingly, no consideration will be given to deceptiveness.

### Additional Comments

In view of the disposition of this case, we are compelled to make additional comments in response to what appears to be a major concern of opposer. Opposer has

characterized applicant's goal in seeking registration as
follows:

> Presumably, the present application,
> with its myriad listing of goods, is
> intended to provide the basis for
> trademark licensing of "M.C. Escher" as
> an adjunct to licensing copyrights in
> the Escher images for use on various
> goods set forth in the application.
> Applicant's interest is apparently
> motivated by the fact that the
> copyrights in the Escher artworks are
> beginning to expire, and a number of the
> more recognizable Escher images will
> enter the public domain in the next
> decade.  Accordingly, to control
> reproductions of such public domain
> images in the future on various
> products, Applicant seeks to control use
> of the artist's name.

Opposer goes on to assert that its "interest in opposing

this matter is to be able to continue its use of 'M.C.

Escher' in its business of sales of Escher artworks without

interference from Applicant" and that its "interest in this

opposition also stems from concern that Applicant will use a

registration, if issued, to restrict public uses of the term

'M.C. Escher (as well as uncopyrighted images) by

discouraging Opposer and others from publishing information

about the artist."  Opposer states that "[t]he ability to

disseminate information about the artist M.C. Escher is

important to the interest of Opposer in maintaining an

interest among the general public in the Escher artworks."

(brief, pp. 6-8)

    Applicant responds as follows:

17

The issuance [of a registration to applicant] cannot prevent or affect in any way Opposer from fairly using the artist's name to identify the artist or his works, the only use Opposer makes of that name. Opposer fails to explain in what way the issuance of a federal trademark registration for the goods listed in the application could in any way interfere with its fair descriptive use of the artist's name.

[I]t could not be more clear that trademark ownership relative to the goods of the pending application does not impact upon the fair use principles which amply protect the right of the public, including Opposer, to use the name M.C. Escher in a descriptive fashion to identify that artist and his works.

Opposer's interest in the mark M.C. Escher is the freedom to continue to identify the artist whose original works it resells. Clearly, issuance to Applicant of a registration for the goods indicated does not impact that right. Opposer may still make a fair descriptive use of the artist's name, just as one selling a Verdi manuscript or a Da Vinci painting may freely identify those items by the name of their creators.

We agree with applicant's version of the ramifications of this decision. We are inclined to view opposer's fear that it and others will somehow be precluded from descriptive fair use of the artist's name as unfounded.[12] As essentially acknowledged by applicant, issuance of a

---

[12] The record hints that part of the fear arises out of the parties' past business dealings and animosity arising therefrom.

registration to it will not give applicant the right to interfere with the fair use (even in a prominent fashion such as that shown by opposer's advertisements) by others of the artist's name in identifying his works of art.

**Decision**: The opposition is dismissed in accordance with the above.

It is noted that the underlying Benelux registration was due to expire on February 28, 2000. The foreign registration must be in force at the time the United States issues the registration based on that foreign registration. Fioravanti v. Fioravanti Corrado S.R.L., 230 USPQ 36, 41 (TTAB 1986) The Office has received a certified copy and English translation of the "confirmation of receipt" of applicant's request for renewal by the Benelux Trade Marks Office. Applicant's counsel has indicated, however, that an official certificate of renewal will not issue until later this year. Accordingly, the involved application file will be remanded in due course to the Examining Attorney to await receipt of proof of renewal of the Benelux registration. *Trademark Manual of Examining Procedure*, § 1004.03.

T. J. Quinn

D. E. Bucher

---

Suffice it to say that any animosity is irrelevant to the

                                        T. E. Holtzman
                                        Administrative Trademark
                                        Judges, Trademark Trial
                                        and Appeal Board

---

specific legal issues in this case.